UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANNA MATHAI** | **CIVIL ACTION** |
| **VESUS** | **NO.** |
| **THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE, on behalf of LOUISIANA STATE UNIVERSITY HEALTH SCIENCES CENTER – MEDICAL CENTER OF LOUISIANA AT NEW ORLEANS – UNIVERSITY CAMPUS, STEVE NELSON, MD, individually, and in his capacity as Dean of LSUHSC School of Medicine** | **JUDGE:**  **MAGISTRATE:** |

**COMPLAINT FOR DAMAGES
AND FOR INJUNCTIVE RELIEF**

The complaint of **ANNA MATHAI**, a natural person of full age and majority, residing in and domiciled in the Parish of Orleans, State of Louisiana, respectfully avers:

**DEFENDANTS**

**I.**

Defendant, **BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AGRICULTURAL MECHANICAL COLLEGE ("THE BOARD"),** is constitutionally empowered entity located in the Parish of East Baton Rouge, State of Louisiana, which is established and governed by Article 8, Section 7 of the Louisiana Constitution and granted the authority and responsibility to supervise and manage the institutions, statewide agricultural programs, and other programs administered through its system; **THE BOARD** is the proper

agent for service upon the **STATE OF LOUISIANA** on behalf of Defendant, **LOUISIANA STATE UNIVERSITY HEALTH SCIENCES CENTER - MEDICAL CENTER OF LOUISIANA AT NEW ORLEANS – UNIVERSITY CAMPUS** ("**LSUHSC**").

## II.

Defendant, **LOUISIANA STATE UNIVERSITY HEALTH SCIENCES CENTER - MEDICAL CENTER OF LOUISIANA AT NEW ORLEANS – UNIVERSITY CAMPUS** ("**LSUHSC**"), is an entity and institution within the Louisiana State University System, physically located and operating in the City of New Orleans, State of Louisiana and, at all relevant times, was the employer of Defendant, **STEVE NELSON, MD**, in his capacity as Dean of **LSUHSC** School of Medicine.

## III.

Defendant, **STEVE NELSON, MD**, is a natural person of full age and majority, residing in and domiciled in the State of Louisiana and is the current Dean of **LSUHSC** School of Medicine and was the Dean of **LSUHSC** School of Medicine at all relevant times herein.

## JURISDICTION

## IV.

This action is brought pursuant to 42 U.S.C. § 1983 and 1988, as well as the Fifth and Fourteenth Amendments to the Constitution of the United States.

## V.

The jurisdiction of this Court is further predicated on Federal Question jurisdiction under 28 U.S.C. § 1331.

**VI.**

Finally, certain claims herein fall under federal supplemental jurisdiction under 28 U.S.C. § 1367.

**FACTUAL ALLEGATIONS**

**VII.**

In 2009, Petitioner, **ANNA MATHAI,** was admitted to **LSUHSC**'s School of Medicine, New Orleans, Louisiana.  During her first two (2) years of medical school, Petitioner was a good student who received a grade of 90 or above (based on a 100 point scale) in the majority of her classes.

**VIII.**

In July 2011, Petitioner, **ANNA MATHAI**, voluntarily sought counseling at the **LSUHSC** Campus Assistance Program ("CAP") for stress she was experiencing during her third year of medical school at **LSUHSC**.  CAP is a free service provided by **LSUHSC** to assist employees, faculty, staff, residents, and students in resolving personal or work related problems and is overseen by Mr. Scott M. Embley, LCSW, a licensed clinical social worker and Assistant Director of the **LSUHSC** Campus Assistance Program and Drug Testing Program.

**IX.**

Petitioner, **ANNA MATHAI**, reported to CAP that she was admitted to St. James Hospital in May of 2011 under the direction of her physician/psychiatrist, John W. Thompson, MD.  Dr. Thompson assessed Petitioner and stated that she was experiencing an adverse reaction to Adderal.  Petitioner then spent three (3) days in St. James Hospital in May 2011 for feeling as though she were having a "nervous breakdown" due to several life stressors, including lack of

3

sleep due to studying extremely long hours for her medical school exams, as well as problems in a personal relationship.

## X.

During one of her CAP sessions, Petitioner admitted to previously smoking marijuana (which she had stopped doing as of August 2011). Petitioner's confidential admission to use of marijuana prompted Scott Embley at CAP to administratively refer Petitioner for an evaluation by Dr. Ary at Addiction Recovery Resources of New Orleans.

## XI.

In November 2011, Dr. Ary recommended to CAP that Petitioner undergo random and frequent drug screens but that Petitioner was fit to perform her medical school duties.

## XII.

Petitioner submitted to all drug testing, each with a negative result, as reported on November 29, 2011, December 13 and 19, 2011, and January 9 and 19, 2012.

## XIII.

In January 2012, CAP received information that Petitioner was allegedly falsifying her urine drug screens. As a result, Petitioner was asked to undergo a supervised drug screen on Friday, January 20, 2012, which Petitioner was unable to attend due to her medical school clinical duties that day at Children's Hospital. Petitioner submitted to an observed test the next available business day (Monday, January 23, 2012), which produced negative results. However, CAP reported the negative results were a "dilute screen" due to "below acceptable levels of creatinine and low specific gravity."

### XIV.

Due to what CAP refers to as non-compliance for missing her drug test on January 20, 2012 (which CAP considered a positive screen by default), as well as CAP's belief that Petitioner's January 23rd test was suspect, Petitioner's case was "closed" in February 2012, effectively discharging her from CAP.

### XV.

Despite Petitioner's presentation of herself to the drug testing center again after January 23, 2012 and again testing negative on her drug screen, as well as Petitioner's own *voluntary* submission to a hair screen (negative results, signifying no drug use for 3 to 6 months prior to test), Petitioner was still required to submit to a three (3) day evaluation at Palmetto Addiction Recovery Center ("Palmetto").

### XVI.

In addition, Petitioner was required to sign **LSUHSC**'s Fitness for Duty/Drug Testing, Continuation of Employment/Enrollment Contract, which stated grounds for which Petitioner could be dismissed from medical school.

### XVII.

On March 13 to March 15, 2012, Petitioner submitted to the evaluation at Palmetto.  In a March 16, 2012 letter from John R. Colaluca, the attending physician at Palmetto, to Scott Embley at CAP, Palmetto stated that it diagnosed Petitioner has having polysubstance dependence and narcissistic traits.  However, during her stay at Palmetto, Petitioner tested negative on every drug screen given, including a 14 panel hair test.  In addition, Palmetto recommended that Petitioner enroll in a 90-day/3 month inpatient treatment center and that Petitioner not be able to return to clinical rotations at the hospital.

### XVIII.

Petitioner refused to submit to a 90-day inpatient program, as it would negatively impact her continuation of medical school and was unnecessary and extreme, as she was not a drug addict.

### XIX.

In a certified letter to Petitioner dated May 5, 2012, **STEVE NELSON** dismissed Petitioner from **LSUHSC** School of Medicine for alleged failure to abide by terms of the **LSUHSC**'s Continued Enrollment Contract and for failure to comply with **LSUHSC's** Fitness for Duty Policy.  However, Petitioner's letter of dismissal from **STEVE NELSON** made no mention of how her dismissal was in compliance with **LSUHSC's** "Rules of Procedure" for student misconduct as outlined by **LSUHSC's** Council on Professional Conduct.

### XX.

On May 11, 2012, Petitioner enrolled in an intensive *outpatient* treatment program (IOP) at Townsend Addiction Outpatient Program ("Townsend"), as suggested by Dr. Thompson.  As Dr. Thompson was a faculty member at Tulane Medical School, Petitioner followed Dr. Thompson's advice that her willingness to enter into *any* program may placate **LSUHSC** and **STEVE NELSON** and provide Petitioner with the flexibility necessary to continue with her medical school education.  Petitioner completed the program in July 2012.  Townsend reported that Petitioner participated fully in the programs activities and underwent 16 urine screens for drugs, all of which were negative.

### XXI.

On May 15, 2012, Petitioner's parents met with **STEVE NELSON**.  At that time, **STEVE NELSON** was provided with information on additional psychological evaluations and

treatment sought by Petitioner. **STEVE NELSON** said he would review Petitioner's additional records and meet with her parents again after his review of Petitioner's additional evaluations.

### XXII.

Also, in May 2012, Petitioner underwent an evaluation by Arwen Podesta, MD, of Podesta Psychiatry, LLC, who reported that he found that Petitioner experienced significant social stressors in the year 2011. Also, Dr. Podesta stated that Petitioner had a dissociative reaction to marijuana, likely due to a combination of severe stress, Adderal, and lack of sleep.

In July 2012, Dr. Podesta diagnosed Petitioner with an adjustment disorder with anxiety, with cannabis use in remission, last used by Petitioner in late August 2011. Dr. Podesta stated that Petitioner is fit to perform any and all school related activities.

### XXIII.

On June 14, 2012, Petitioner returned to Rama K. Kongara, M.D.'s office for an evaluation. Dr. Kongara treated Petitioner in May 2011 upon Petitioner's admission to St. James Hospital (see paragraph IX, supra). In her June 14, 2012 written evaluation, Dr. Kongara states:

> I have examined [Petitioner] today....
>
> The patient appears to be stable. She is not on any medication at this time. She is neither psychotic nor depressed, not anxious at this time. **I do not really believe that she has a drug problem.**
>
> I feel that she was under a lot of stress during the school time exam time and problems at home, problems with her boyfriend, etc. Now, **she is in stable condition and I do not recommend any treatment for her at this time and I think she should continued back in the medical school.** I do not recommend any therapy or any medication for her at this time. (Emphasis added.)

### XXIV.

In July 2012, after his receipt of Petitioner's additional records, **STEVE NELSON** cancelled his follow-up appointment with Petitioner's parents. Specifically, on July 6, 2012, an

7

email from **STEVE NELSON's** assistant stated that he had reviewed the additional records provided to him, but that the university's position on Petitioner's dismissal from medical school remained unchanged.

## XXV.

As a branch of a public state university system, Defendant, **LSUHSC**, was required, to provide Petitioner with notice of the charges against her and an opportunity to be heard before it expelled her due to misconduct.

## XXVI.

All Defendants, acting in concert to expel Petitioner, under color of State and Federal law, deprived Petitioner of her Constitutional rights to procedural due process.

## XXVII.

Defendant, **LSUHSC** breached its contractual obligations to Petitioner, including but not limited to those provisions contained within their written handbooks, student codes of conduct, policies and procedures disseminated on their internet web sites, and specifically contained within Defendant, **LSUHSC's** "Rules of Procedure" of the Council on Professional Conduct. The Rules of Procedure guarantee a student the right to a fair and impartial hearing if the student is accused of misconduct or violating university regulations, specifically: a hearing by the Council; written notice of the formal charge against her; a hearing wherein the accused may present evidence/witnesses in her defense; submission of the written recommendation of the Council to the Dean for decision; and the ability to appeal the decision of the Dean of the School of Medicine *as a matter of right*.

## CAUSES OF ACTION

## 1983 ACTION AGAINST ALL DEFENDANTS FOR VIOLATION OF PETITIONER'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS

### XXVIII.

Petitioner, **ANNA MATHAI**, brings an action under 42 U.S.C. § 1983 against all Defendants, alleging a violation of her Fifth and Fourteenth Amendment rights under the United States Constitution guaranteeing procedural and substantive due process rights.  A student at a public university holds a protected property interest in her education.  Before being expelled for misconduct, she must at least be afforded notice and a meaningful opportunity to be heard. *Dixon v. Alabama State Board of Education,* 294 F .2d 150 (5th Cir. 1961); see also *Goss v. Lopez,* 419 U.S. *565,* 574 (1975); *Bd. of Curators v. Horowitz,* 435 U.S. 78, 86 (1978).  Defendants deprived Petitioner of these rights, and at no time was she afforded notice of the allegations against her or an opportunity to be heard.  Due to the nature of the violation, Defendants' internal procedures do not provide adequate remedy for the Constitutional violations.  The law is clearly established in this area, and Defendants had fair warning that Constitutional Due Process requires at a minimum notice and an opportunity to be heard.  Thus, Defendants are liable to Petitioner for her damages, in an amount to be determined by this Honorable Court.

## BREACH OF CONTRACT

### XXIX.

Petitioner, **ANNA MATHAI,** brings an action for breach of contract against the Defendants.  The policies and procedures regarding discipline delineated and disseminated by Defendants, and through **LSUHSC's** School of Medicine, in the student handbooks, codes of conduct, and the Council on Professional Conduct's "Rules of Procedure," created a binding

contract under the laws of the State of Louisiana between Defendants and Petitioner.  Defendants breached this contract in failing to follow these policies and procedures, and Petitioner has suffered economic damages through her deprivation of opportunity to obtain an M.D. degree, as well as expenses incurred in previously attending medical school.  Further, Petitioner has incurred damages to her reputation as a result of Defendants' breach.

## **INJUNCTION**

### **XXX.**

Petitioner desires that this Court issue an injunction under Fed. R. Civ. Pro. 65, enjoining Defendants from dismissing petitioner from **LSUHSC** School of Medicine, or alternatively, that Defendants be ordered to reinstate Petitioner as a student in good standing and to enjoin Defendants from engaging in policies and practices stated above.

### **XXXI.**

Defendants, under color of law of the State of Louisiana, are depriving Petitioner of her constitutionally-guaranteed rights to procedural and substantive due process before divesting her of her protected property interest in her education without notice and a meaningful opportunity to be heard.  Defendants will continue to deny Petitioner her rights unless this Court restrains Defendants from engaging in policies and practices stated above and orders Defendants to reinstate Petitioner as a medical student at **LSUHSC**.

### **XXXII.**

Petitioner, **ANNA MATHAI,** is suffering irreparable injury and is threatened with irreparable injury in the future by the performance and continuance of the acts mentioned in this Complaint.

**XXXIII.**

Specifically, Petitioner is unable to continue with her medical career, as she cannot attend medical school classes at **LSUHSC** Medical School, where she has already invested nearly three (3) years of her time and effort. Petitioner can never recover those years of her life she spent painstakingly working towards her medical degree.

**XXXIIV.**

Petitioner continues to be deprived of the ability to progress with her coursework and to gain the knowledge and skills necessary and fundamental to the practice of medicine. Petitioner cannot transfer or attend any other medical school without being in good standing with **LSUHSC**. And the longer Petitioner is deprived of her medical school education, the more difficult it will be for her to recoup the time and skills lost, all resulting in irreparable injury.

**XXXV.**

Plaintiff has no plain, adequate, or complete remedy to reduce the wrongs and illegal acts complained of herein. Any other remedy to which Petitioner could be entitled would be attended by uncertainty and delays as to deny substantial relief, cause further irreparable injury, and cause damage and inconvenience.

**XXXVI.**

There is a substantial likelihood that Petitioner will prevail on the merits of this case. Defendants dismissed Petitioner from medical school without due process, including notice and an opportunity to be heard, as outlined in the Council on Professional Conduct's Rules of Procedure. In addition, the Council on Professional Conduct's Rules of Procedure created a binding contract under the laws of the State of Louisiana between Defendants and Petitioner, and Defendants breached this contract in failing to follow these policies and procedures. Despite the

fact that Petitioner signed **LSUHSC's** Fitness for Duty/Drug Testing, Continuation of Employment/Enrollment Contract, which stated grounds for which Petitioner could be dismissed from medical school, this contract does not constitute Petitioner's waiver of her due process rights, as due process rights within the context of public education and disciplinary matters cannot be waived under *Dixon v. Alabama State Board of Education*, 294 F.2d 150 (5 Cir. 1961), cert. denied, 368 U.S. 930 (1961).

**PRAYER FOR RELIEF**

**WHEREFORE,** Petitioner, **ANNA MATHAI,** prays that:

1. Defendants, **THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE,** on behalf of **LOUISIANA STATE UNIVERSITY HEALTH SCIENCES CENTER – MEDICAL CENTER OF LOUISIANA AT NEW ORLEANS – UNIVERSITY CAMPUS ("LSUHSC"),** and **STEVE NELSON, MD,** individually, and in his capacity as Dean of **LSUHSC** School of Medicine, be duly cited to appear and to answer this Complaint for Damages and for Injunctive Relief, and that summons be issued on all Defendants;

2. After due proceedings had, there be judgment in favor of Petitioner and against Defendants, jointly and *in solido*, for compensatory, punitive and such damages as are reasonable in the premises, including past, present, and future mental anguish and emotional distress, loss wages, loss of earning capacity, and loss of enjoyment of life, together with legal interest thereon from date of judicial demand until paid, and for all costs of this proceedings, including expert witness fees and attorney's fees pursuant to 42 U.S.C. § 1988;

3. The Court grant Petitioner declaratory and injunctive relief, including an Order that Defendants reinstate Petitioner as a student at **LSUHSC** School of Medicine; and

4. The Court grant Petitioner all general, equitable and further relief that this Court may deem appropriate under the circumstances.

**Respectfully Submitted:**

**CAPITELLI & WICKER**

  **/s/ T. Carey Wicker**
**T. Carey Wicker, III, Esq. (La. Bar No. 13450)**
**J. Alex Watkins, Esq. (La. Bar No. 29472)**
**1100 Poydras St., Ste. 2950**
**New Orleans, LA 70163**
**Phone: (504) 582-2425**
**Fax: (504) 582-2422**

**AND**

**BENNETT WOLFF, Esq. (La. Bar No. 2193)**
**Wolff & Wolff**
**3017 21st St., Ste. 100**
**Metairie, LA 70002**
**Phone: (504) 831-1001**
**Fax: (504) 833-6365**

**ATTORNEYS FOR PETITIONER,**
**ANNA MATHAI**