UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANNA MATHAI                                    CIVIL ACTION

VERSUS                                         NO: 12-2778

BOARD OF SUPERVISORS OF                        SECTION: R
LOUISIANA STATE UNIVERSITY
AND AGRICULTURAL AND
MECHANICAL COLLEGE AND STEVE
NELSON

**ORDER AND REASONS**

Before the Court is defendants' motion to dismiss. For the following reasons, the Court GRANTS the motion to dismiss of the Board of Supervisors of Louisiana State University and GRANTS the motion to dismiss of Dr. Steve Nelson.

**I.    BACKGROUND**

This dispute stems from plaintiff Anna Mathai's dismissal from the School of Medicine of the Louisiana State University Health Sciences Center. According to her complaint, plaintiff was admitted to the medical school in 2009 and performed well during her first two years of the program.[1] In July 2011, she sought counseling with the school's Campus Assistance Program (CAP) and reported that she had been hospitalized in May 2011 for an adverse reaction to Adderall and feelings of a nervous

_____

[1]      R. Doc. 1 at 3.

breakdown.[2] Plaintiff told a CAP social worker that she had previously smoked marijuana but states that she stopped using the drug in August 2011.[3]

On August 25, 2011, plaintiff signed a document entitled "LSUHSC Fitness for Duty/Drug Testing Continuation of Employment/Enrollment Contract."[4] The contract stated that plaintiff voluntarily entered into the agreement and that she understood that, "in order to ensure [her] safety as well as the safety of others," her continued enrollment at the medical school was contingent on her compliance with any rehabilitation programs or treatment guidelines mandated by CAP.[5] CAP referred plaintiff for an evaluation by Dr. Ary at Addiction Recovery Resources of New Orleans, which resulted in Dr. Ary's recommendation that plaintiff undergo drug screens but be permitted to continue with her medical school duties.[6] Plaintiff submitted to five drug tests between November 2011 and January 2012 and tested negative.[7] But, after CAP received information that plaintiff may have falsified her drug screens, CAP asked plaintiff to undergo a

---

[2]   *Id.*

[3]   *Id.* at 4.

[4]   R. Doc. 21-2.

[5]   *Id.*

[6]   R. Doc. 1 at 4.

[7]   *Id.*

supervised drug screen on January 20, 2012.[8] Plaintiff maintains that she was unable to attend due to her clinical duties at the medical school, and she submitted to an observed test on January 23, 2012, the following Monday.[9] The test was negative but was reported as a "dilute screen" that CAP considered suspicious.[10] CAP then required plaintiff to complete a second "Fitness for Duty/Drug Testing Continuation of Employment/Enrollment Contract," which she signed on February 15, 2012.[11] This document provides in relevant part:

> I understand I was referred back to the LSUHSC Campus Assistance Program and Drug Testing Program on February 13, 2012 due to the concerns on the administrative referral form. Due to the foregoing concerns during my enrollment/employment, LSUHSC has necessitated that specific terms be applied to my continuation of enrollment/employment at this time in order to ensure my safety **as well as the safety of others**.
>
> Therefore I, Anna Mathai, voluntarily enter into the following **agreement in lieu of disciplinary action, to comply with the LSUHSC fitness for duty and substance abuse policies and to follow the standards mentioned above**. . . .
>
> I understand that LSUHSC will allow me to continue my employment/enrollment under the following conditions:
>
> . . . .

---

[8] *Id.*

[9] *Id.*

[10] *Id.* at 4-5.

[11] R. Doc. 21-3.

3

5. **I agree to follow the directions and recommendations of CAP. I will participate in all required activities of any rehabilitation program and/or C/EAP treatment plan I am involved in.**

6. I understand continuation of employment/enrollment is contingent upon entering into and successfully completing a treatment and/or aftercare program approved by LSUHSC and/or CAP and receiving a medical release form indicating my fitness for work/school.

7. If I have tested positive for alcohol/drugs or have been diagnosed with an alcohol or drug problem I will submit to regular or irregular, unannounced and/or announced alcohol and/or drug screens as required by LSUHSC and my rehabilitation and/or CAP treatment plan. . . . I understand and acknowledge that the . . . results of any tests, subsequent alcohol/drug related misconduct, a subsequent alcohol/drug test result, or refusal to test will be **grounds for immediate termination of my enrollment.**

. . . .

11. I understand that any evidence of non-compliance with treatment guidelines, incomplete treatment, non-compliance with an aftercare program or failure to abide by any part of a Continuation of Employment/Enrollment Contract between LSUHSC and me will be **grounds for immediate dismissal from the LSU School of Medicine.**[12]

Notably, while the two "Fitness for Duty" contracts were substantially similar, the first agreement provided that a failure to comply with its terms could result in "suspension or termination,"[13] whereas the second provided that failure to comply would be "grounds for *immediate termination.*"[14]

---

[12]     *Id.* at 1-2 (first and third emphases added).

[13]     R. Doc. 21-2 at 2.

[14]     R. Doc. 21-3 at 2.

4

LSU then required plaintiff to undergo a three-day evaluation at Palmetto Addiction Recovery Center. After plaintiff's evaluation in March 2012, the attending physician at Palmetto sent a letter to CAP in which he diagnosed plaintiff as having "polysubstance dependence and narcissistic traits," despite her negative drug screens.[15] The Palmetto physician recommended that plaintiff enroll in a three-month inpatient treatment program, which plaintiff refused to do because the program would not allow her to continue her studies, and she considered such action to be "unnecessary and extreme."[16]

In a letter dated April 5, 2012, Steve Nelson, Dean of the School of Medicine, dismissed plaintiff from the school.[17] The letter in its entirety read, "This is to inform you that pursuant to your Continuation of Enrollment Contract you have been dismissed from the LSUHSC-NO School of Medicine for failure to abide by the terms of said contract and failure to comply with the LSUHSC Fitness for Duty Policy."[18] A month later, plaintiff enrolled in an outpatient treatment program, which she successfully completed in July 2012.[19] Plaintiff's parents met

---

[15]   R. Doc. 1 at 5.

[16]   *Id.* at 6.

[17]   R. Doc. 21-4.

[18]   *Id.*

[19]   R. Doc. 1 at 6.

with Dr. Nelson on May 15, 2012 and provided him with information on plaintiff's treatment and evaluations.[20] Dr. Nelson stated that he would review the records and meet with plaintiff's parents again. Over the next few months, plaintiff was evaluated by two doctors, both of whom stated that she was fit to continue with medical school.[21] After receiving plaintiff's medical records in July 2012, Nelson cancelled his meeting with plaintiff's parents and indicated through an email sent by his assistant that his position as to plaintiff's dismissal remained unchanged.[22]

On November 15, 2012, plaintiff brought an action under 42 U.S.C. § 1983 against the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, on behalf of the LSU Health Sciences Center Medical Center, and Dr. Steve Nelson, individually and in his capacity as Dean of the School of Medicine.[23] Plaintiff contends that her Fifth and Fourteenth Amendment rights were violated by her dismissal from the school without due process.[24] Plaintiff also asserts a breach of contract claim, contending that defendants failed to follow the

---

[20]    *Id.* at 6-7.

[21]    *Id.* at 7.

[22]    *Id.* at 7-8.

[23]    R. Doc. 1.

[24]    *Id.* at 9.

policies and procedures set forth in the school's student handbook, codes of conduct, and the Council of Professional Conduct's "Rules of Procedure."[25] Plaintiff seeks both damages and injunctive relief, requesting that the Court issue an injunction enjoining defendants from dismissing plaintiff from the School of Medicine or, alternatively, that the Court order defendants to reinstate plaintiff.[26] Defendants filed a motion to dismiss, which is presently before the Court.[27]

In considering a motion to dismiss for failure to state a claim, a court must typically limit itself to the contents of the pleadings, including their attachments. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir.2000). "If, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). But uncontested documents referred to in the pleadings may be considered by the court without converting the motion to one for summary judgment, even when the documents are not physically attached to the complaint. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 313 (5th Cir.2002) (finding that the district court properly considered

---

[25]     *Id.* at 9-10.

[26]     *Id.* at 10-11.

[27]     R. Doc. 21.

documents not attached to the complaint in ruling on a Rule 12(c) motion). The court also may consider documents attached to a motion to dismiss without converting it to a summary judgment motion if the documents are referred to in the complaint and are central to the plaintiff's claim. *Causey v. Sewell Cadillac-Chevrolet, Inc.,* 394 F.3d 285, 288 (5th Cir.2004) (citation omitted). Accordingly, the Court will consider the aforementioned "Fitness for Duty" contracts and the letter of dismissal in resolving this motion to dismiss, since those documents are referred to in the complaint and are central to the claims in this case.

## II.  STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555; *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007).

## III. DISCUSSION

### A. Claims against LSU Board of Supervisors

#### 1. § 1983 claim

Defendants argue that plaintiff's suit against the Board of Supervisors is improper because the Board is immune from suit as an arm of the state. Sovereign immunity under the Eleventh Amendment bars a state's citizens from suing the state or its

agencies in federal courts. *Cozzo v. Tangipahoa Parish Council-President Gov't,* 279 F.3d 273, 280 (5th Cir. 2002). When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief, unless the state has waived its immunity. *Id.* By statute, Louisiana has refused to waive its Eleventh Amendment sovereign immunity against suits in federal courts. *See id.* at 281; La. Rev. Stat. Ann. § 13:5106(A). Courts consider the LSU Board of Supervisors to be an arm of the state for purposes of Eleventh Amendment immunity. *See, e.g.,Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013); *Dyess v. La. State Univ. Bd. of Supervisors*, No. 05-392, 2005 WL 2060915, at *4 (E.D. La. Aug. 19, 2005). The LSU Board of Supervisors is thus immune from liability for plaintiff's § 1983 claims. *See, e.g., Dyess*, 2005 WL 2060915, at *4.

Plaintiff nevertheless argues that her claims should not be dismissed if the Court accepts defendants' contention that plaintiff suffers from drug abuse or psychological disabilities, because Congress abrogated state sovereign immunity in suits alleging violations of the Americans with Disabilities Act (ADA). *See* 42 U.S.C. § 12202. Since plaintiff has not brought a claim under the ADA, the alleged effects of the ADA on the Board of Supervisors' immunity are irrelevant.[28] Accordingly, the Court

---

[28]    Plaintiff makes the same argument regarding her claims against Dr. Nelson in his official capacity, but this contention is also meritless, due to plaintiff's failure to bring a claim

dismisses plaintiff's § 1983 claims under Rule 12(b)(1) for lack of subject matter jurisdiction.

   *2. Breach of contract claim*

   Plaintiff also asserts a breach of contract claim against defendants, arguing that the school's student handbooks, codes of conduct, and the Council of Professional Conduct's "Rules of Procedure" set forth procedures that must be followed before disciplinary action is taken.[29] Defendants argue that plaintiff's behavior does not fall within the parameters covered by the "Rules of Procedure." But, in fact, plaintiff's claim is barred on jurisdictional grounds. Louisiana, and thus the Board of Supervisors, has not waived its immunity in federal court for state law claims. La. Rev. Stat. Ann. § 13:5106(A); *Raj*, 714 F.3d at 329 (state law claims against LSU, including breach of contract, barred by sovereign immunity); *Griffith v. Louisiana*, 808 F. Supp. 2d 926, 933 (E.D. La. 2011). Accordingly, the Court also lacks subject matter jurisdiction over plaintiff's state law claims against the Board of Supervisors, and dismisses those claims pursuant to Rule 12(b)(1). *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001) ("[F]ederal courts must address jurisdictional questions whenever they are raised and

---

under the ADA.

   [29]   R. Doc. 1 at 9.

11

must consider jurisdiction *sua sponte* if not raised by the parties.").

**B. Claims against Dr. Nelson**

*1. § 1983 claim against Dr. Nelson in official capacity*

Plaintiff's claims for money damages against Dr. Nelson in his official capacity must also be dismissed. A suit against a state official in his official capacity constitutes a suit against the state itself, which is barred by the Eleventh Amendment. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). But plaintiff's claim for *injunctive* relief against Dr. Nelson in his official capacity is not barred by state sovereign immunity. The doctrine of *Ex parte Young* serves as an exception to the rule that official capacity suits represent suits against the state. A state official sued in his official capacity for injunctive relieve is a "person" under § 1983, "because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)); *Ex parte Young*, 209 U.S. 123, 145-48 (1908).

To determine whether a plaintiff may maintain claims against a state official in his official capacity, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief

12

properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks omitted). The Fifth Circuit has held that "a request for reinstatement is sufficient to bring a case within the *Ex parte Young* exception to Eleventh Amendment immunity, as it is a claim for prospective relief designed to end a continuing violation of federal law." *Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 324 (5th Cir. 2008). Although in *Nelson* the Fifth Circuit addressed the employment context, the court's holding appears to apply when a plaintiff seeks reinstatement to an educational program. *See, e.g., Duncan v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 469 F. App'x 364, 367 (5th Cir. 2012) (affirming dismissal of student's claims against school that expelled him, because although he sought injunctive relief, he named only the school as defendant, not state officials in their official capacities); *Dupree v. Belton*, No. 10-1592, 2013 WL 701068, at *3-4 (W.D. La. Feb. 26, 2013) (considering whether plaintiff's claim that school officials violated his rights in refusing to overturn his suspension entitled him to prospective injunctive relief). Because plaintiff alleges that her right to due process was violated and seeks injunctive relief in the form of reinstatement, her claim falls within the *Ex parte Young* exception and is not barred by the Eleventh Amendment.

13

Defendants argue, however, that plaintiff has failed to allege facts that establish a violation of federal law. Plaintiff contends that Dr. Nelson violated her right to due process by dismissing her from the medical school without notice and an opportunity to be heard. To state such a claim, plaintiff must allege facts sufficient to show (1) that she was deprived of a liberty or property interest protected by the Due Process Clause, and (2) that she was deprived of that interest without constitutionally adequate process. *LaCroix v. Marshall Cnty.*, 409 F. App'x 794, 803 (5th Cir. 2011). The Court assumes without deciding that plaintiff has a property or liberty interest in her continuing education at LSU. Defendant does not argue against the existence of such an interest, and both the United States Supreme Court and the Fifth Circuit have addressed due process claims by postsecondary students without expressly stating that students have a property or liberty interest in their studies. *See, e.g., Bd. of Curators of the Univ. of Mo. v. Horowitz,* 435 U.S. 78, 84-85 (1978); *Ekmark v. Matthews*, No. 12-50808, 2013 WL 1363545, at *1 (5th Cir. Apr. 5, 2013). But even assuming that plaintiff has an interest protected by the Due Process Clause, her claim cannot succeed because she was not denied due process.

In *Goss v. Lopez*, the Supreme Court held that a student subject to school disciplinary proceedings is entitled to some

14

procedural due process.[30] 419 U.S. 565, 574 (1975). The Supreme
Court stated that a student must be informed of the charges
against him and, if he denies those charges, must be given an
opportunity to explain his version of the facts; but there "need
be no delay between the time 'notice' is given and the time of
the hearing." *Id.* at 581-82. In *Horowitz*, the Supreme Court
distinguished dismissals for academic reasons from disciplinary
proceedings and held that the former do not require a hearing as
set forth in *Goss* before a student is dismissed. The Court
emphasized the significant difference between "the failure of a
student to meet academic standards and the violation by a student
of valid rules of conduct." *Horowitz*, 435 U.S. at 86. The Court
determined that action based on disciplinary reasons resembles
traditional judicial and administrative factfinding such that a
hearing provides "a meaningful hedge against erroneous action."
*Id*. at 88-89 (quoting *Goss*, 419 U.S. at 583). Conversely, the
decision that a student has not met a school's academic standards
is more subjective and based on an evaluation of cumulative
information and therefore not easily adapted to judicial
procedure or decision-making. *Id*. at 89-90. The Court thus held

---

[30]     In their motions, plaintiff and defendants focus on
plaintiff's right to procedural due process, and thus the Court
will not address whether plaintiff has stated a claim pursuant to
substantive due process. *See, e.g., Regent of Univ. of Mich. v.
Ewing*, 474 U.S. 214, 222 (1985) (assuming without deciding that
student's property right gave rise to substantive right under the
Due Process Clause).

that Horowitz's dismissal from medical school for poor clinical performance, based in part on unsatisfactory personal hygiene, interactions with patients, and attendance, should be considered academic, and plaintiff need not be afforded the process described in *Goss*.

Here, Fifth Circuit precedent compels a conclusion that plaintiff's dismissal was academic. The plaintiff in *Shaboon v. Duncan* had been dismissed from a medical residency program after she exhibited signs of mental illness, refused to cooperate fully with psychiatrists, and stopped taking her medication. 252 F.3d 722, 725-26 (5th Cir. 2001). The court characterized her dismissal as academic, since it implicated her fitness to perform as a doctor. *Id*. at 731 ("Although Shaboon's intransigence might suggest that her dismissal was disciplinary, her refusal to acknowledge and deal with her problems furnished a sound academic basis for her dismissal."). In addition to receiving negative evaluations, plaintiff's failure to follow the recommended treatment led her to miss clinical rotations and caused doctors to indicate that she was not ready to return to work. *Id*. The court therefore found that Shaboon was not entitled to a hearing and that her due process rights were not violated. *Id.*

This case is similar to *Shaboon*. Plaintiff was dismissed from medical school for failure to abide by the terms of the "Fitness for Duty/Drug Testing Continuation of

Employment/Enrollment Contract."[31] That agreement requires, among other things, that in order to be considered "fit for duty" to serve as a health care professional, plaintiff was required to "follow the directions and recommendations of CAP" and "participate in all required activities of any rehabilitation program and/or C/EAP treatment program" in which she was involved.[32] The contract stipulates that plaintiff's compliance with those conditions was necessary "to ensure [her] safety as well as the safety of others."[33] It further provides that, in order to "warrant the public confidence and trust bestowed upon [her] as a health care professional," plaintiff was required to "possess and maintain . . . emotional health and judgment, as well as the ability to behave in a professional, reliable, mature and responsible manner"[34] -- qualities that would be threatened by drug use and/or addiction. *Cf. Shaboon*, 252 F.3d at 731 (citing plaintiff's mental problems as a factor "related to her fitness to perform as a doctor"). Evaluation of plaintiff's progress, or lack thereof, in the area of emotional health and judgment "is no less an 'academic' judgment because it involves observation of her skills . . . in actual conditions of practice,

---

[31]    *See* R. Doc. 21-4.

[32]    R. Doc. 21-2; *see also* R. Doc. 21-3.

[33]    R. Doc. 21-3 at 1.

[34]    *Id.*

17

rather than assigning a grade to her written answers on an essay question." *Horowitz*, 435 U.S. at 95 (Powell, J., concurring); *cf. id.* at 91 n.6 ("Personal hygiene and timeliness may be as important factors in a school's determination of whether a student will make a good medical doctor as the student's ability to take a case history or diagnose an illness."); *Shaboon*, 252 F.3d at 731. It is clear from the "Fitness for Duty" contracts that plaintiff could not be deemed fit to engage in her professional duties unless she complied with the treatment recommendations of CAP. Her refusal to follow those recommendations after receiving a diagnosis of "polysubstance dependence and narcissistic traits"[35] "furnished a sound academic basis for dismissal." *Shaboon*, 252 F.3d at 731.

The foregoing analysis accords with authority in other Circuits regarding the distinction between academic and disciplinary dismissals. Surveying cases from the First, Sixth, and Seventh Circuits, the District Court for the District of New Mexico has distilled the principle that an academic dismissal will be found "where a student's scholarship or conduct reflects on the personal qualities necessary to succeed in the field in which he or she is studying and is based on an at least partially subjective appraisal of those qualities." *Allahverdi v. Regents of Univ. of N.M.*, 05-277 JB/JDS, 2006 WL 1313807, at *12-13

---

[35]     R. Doc. 1 at 5.

(D.N.M. Apr. 25, 2006).[36] For example, in *Fenje v. Feld*, the Seventh Circuit determined that a medical resident was dismissed for academic reasons after he failed to disclose on his application an earlier dismissal from another residency program, because that conduct impugned "his future credibility as a source of information concerning the care of seriously ill patients." 398 F.3d 620, 625 (7th Cir. 2005); *see also Yoder v. Univ. of Louisville*, No. 12-5354, 2013 WL 1976515, at *11 (6th Cir. May 15, 2013) (suggesting that nursing student's dismissal for failure to comply with a confidentiality agreement should be classified as academic rather than disciplinary where the school "reasonably concluded that [plaintiff]'s apparent inability to keep patient information confidential was an important consideration in determining [her] suitability as a future nurse"). Here, plaintiff's failure to abide by the university-mandated treatment program after her diagnosis with "polysubstance dependence and narcissistic traits"[37] is a basis

---

[36]     The court acknowledged the breadth of this definition, but determined that "a broad definition of academic is necessary to protect what the Supreme Court has stated is 'the historic judgment of educators' to evaluate their students' academic abilities." *Allahverdi*, 2006 WL 1313807, at *13 (quoting *Horowitz*, 435 U.S. at 90).

[37]     R. Doc. 1 at 5.

for defendants to conclude that plaintiff was academically unfit to continue in her medical training.[38]

Because plaintiff's dismissal was academic, rather than disciplinary, the only procedural safeguards required were "ample notice" of the conditions upon which her continued enrollment was predicated and "warning of the consequences that would follow h[er] failure to" abide by those conditions. *Shaboon*, 252 F.3d at 730; *see also Horowitz*, 435 U.S. at 85 (no due process violation when "[t]he school fully informed respondent of the faculty's dissatisfaction with her clinical progress and the danger that this posed to timely graduation and continued enrollment" and when "[t]he ultimate decision to dismiss respondent was careful and deliberate"); *Ekmark*, 2013 WL 1363545, at *2 ("Adverse academic actions against medical residents require only the minimum procedure of notice and not a hearing."). Under this standard, plaintiff certainly received adequate process. She received written notice on two occasions that her failure to comply with the school's treatment requirements could result in expulsion.[39] The Fitness for Duty contracts clearly stated that if plaintiff did not abide by their terms, she was subject to

---

[38]    The Court notes that offenses relating to a student's ability to succeed in his or her chosen field are rendered no less "academic" even if they could potentially subject the student to disciplinary sanctions as well. *Monroe v. Ark. State Univ.*, 495 F.3d 591, 595 (8th Cir. 2007).

[39]    R. Docs. 21-2, 21-3.

"immediate dismissal from the LSU School of Medicine."[40] Under *Shaboon* and *Horowitz*, no more is required.

In sum, plaintiff is unable to show that her federal constitutional rights were violated in connection with her dismissal from the LSU School of Medicine. Accordingly, her § 1983 claims against Dr. Nelson in his official capacity must fail.

*2. § 1983 claims against Dr. Nelson in individual capacity*

In addition, Dr. Nelson contends that plaintiff's complaint fails to overcome his assertion of qualified immunity. Qualified immunity shields public officials from suit and liability under § 1983, "unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (internal quotation marks omitted). When a defendant invokes qualified immunity, the plaintiff bears the burden of demonstrating that the defense is inapplicable through a two-prong test. *McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir. 2002) (en banc). Plaintiff first must "claim that the defendants committed a constitutional violation under current law." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). Plaintiff must then claim that defendants' actions were

---

[40]     R. Doc. 21-3 at 2; *accord* R. Doc. 21-2 at 2.

"objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id*.

Because plaintiff has failed to state a claim for a constitutional violation, she has failed to overcome defendant's assertion of qualified immunity. Plaintiffs' § 1983 claims against Dr. Nelson in his individual capacity must be dismissed.

*3. Breach of contract claim against Dr. Nelson*

Because plaintiff brings her breach of contract claim against "defendants," the Court assumes that it is asserted against both the Board of Supervisors and Dr. Nelson. The Eleventh Amendment precludes federal courts from exercising pendent jurisdiction over state law claims against state officials in their official capacities, but not claims against officials in their personal capacities. *See Wilson v. UT Health Ctr.,* 973 F.2d 1263, 1271 (5th Cir. 1992). Yet plaintiff has failed to state a claim for breach of contract against Dr. Nelson in his personal capacity. Regardless of any contract that plaintiff may have formed with the school, she has not alleged that Dr. Nelson was a party to the contract and thus liable for its breach. *See, e.g., Allen v. Tulane Univ.*, No. 92-4070, 1993 WL 459949, at *4 (E.D. La. Nov. 2, 1993) (dismissing breach of employment contract claim against school dean, since he was not a party to the contract). To deem Dr. Nelson a contracting party would be to consider him in his official capacity as dean of the

22

school, and the Court lacks jurisdiction over such claims. *See Wilson*, 973 F.2d at 1271. Accordingly, the Court dismisses plaintiff's breach of contract claim against Dr. Nelson.

**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS defendants' motion to dismiss plaintiff's § 1983 claims against the LSU Board of Supervisors and Dr. Nelson (both in his official and individual capacity), as well as plaintiff's breach of contract claim against both defendants.

New Orleans, Louisiana, this 17th day of July, 2013.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE